Laurence Peter Digesti
State Bar No. 88
485 West Fifth Street
Reno, Nevada 89503
P: (775) 323-7797
F: (775) 323-5944

Matthew Peter Digesti
State Bar No. 9793
1113 Adella Avenue, Suite 100
Coronado CA 92118
P: (800) 939-8533
F: (800) 939-8533
Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

* * * * *

| | |
|---|---|
| HERLINA SNIDER, | CASE NO. |
| Plaintiff, | DEPT. NO. |
| vs. | |
| GREATER NEVADA LLC d/b/a as GREATER NEVADA MORTGAGE SERVICES; DERRY GILMORE, individually and in his official capacity, and Does 1-10, | **COMPLAINT AND JURY DEMAND** |
| Defendants. | |

COMES NOW, Plaintiff Herlina Snider, by and through her undersigned attorneys, hereby requests a jury trial relative to all issues so triable and complains of Defendants as follows:

### JURISDICTION AND VENUE

1. Plaintiff brings this action under Title VII of the 1964 Civil Rights Act (as amended in 1991, 42 U.S.C. § 2000e *et. seq.*) and the Age Discrimination in Employment Act of 1967 (codified in 29 U.S.C.A. §§ 621, as amended).

///

2. This Court has subject matter jurisdiction over this case pursuant to Title VII of the 1964 Civil Rights Act (as amended in 1991, 42 U.S.C. § 2000e  *et. seq.*), the Age Discrimination in Employment Act of 1967 ( codified in 29 U.S.C. §§ 621, as amended), and 28 U.S.C. § 1331.

3. This Court has jurisdiction over Defendant GREATER NEVADA, LLC d/b/a as GREATER NEVADA MORTGAGE SERVICES (collectively "Defendant GNMS") and DERRY GILMORE ("Defendant Gilmore") because both Defendants have sufficient minimum contacts within this District so as to render this Court's exercise of jurisdiction over said Defendants consistent with traditional notions of fair play and substantial justice.

4. Venue is proper in this Court under 28 U.S.C. § 1391(a)(2) and 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in the District of Nevada.

5. This Court has supplemental jurisdiction over state law claims raised herein pursuant to 28 U.S.C. § 1367.

**PARTIES**

6. Plaintiff is a citizen of the United States and resides in Carson City, Nevada, which is in this judicial district. Plaintiff is an adult, competent woman who, at all times relevant, was employed by Defendant GNMS, as a Secondary Marketing Specialist, and is a "person" within the meaning of 42 U.S.C. § 2000e(a) and 29 U.S.C. § 630(a).

7. Defendant GNMS is a LLC, organized and existing under, and by virtue of, the laws of the state of Nevada, and engaged in an industry affecting commerce—namely, the business of mortgage lending services.

8. At all times herein mentioned, Defendant GNMS was an "employer" within the meaning of 42 U.S.C. § 2000e(b) and 29 U.S.C. § 630(b) because it employed twenty or more individuals on a full-time basis in excess of twenty weeks per year.

9. Defendant Gilmore is named in his individual and official capacity as Vice President of GNMS. Defendant Gilmore was first employed by Defendant GNMS in November 2005 and, thereafter, continued employment with GNMS at all times relevant herein.

10. That Plaintiff does not know the true names and capacities, whether corporate or

individual, of those Defendants sued herein as DOES 1-10-, inclusive. Plaintiff prays leave that when the true names and capacities of said Defendants are ascertained, she may be permitted to insert the same herein with appropriate allegations; but upon information and belief, Plaintiff alleges that each of said Defendants is legally responsible for the events and happenings referred to herein and proximately caused damages to Plaintiff, as alleged herein.

11. That each of the Defendants is the agent, servant, employee, representative, principal, master, supervisor and/or employer of each of the other Defendants; each Defendant was acting within the service and scope of that agency, employment or other relationship at all times alleged herein. Relief is sought herein against each and all Defendants, as well as its or their agents, assistants, successors, employees and all persons acting in concert or cooperation with them or at their direction.

## STATEMENT OF FACTS

12. Plaintiff is a female of Chinese descent who, at all times relevant herein, was over the age of forty.

13. On or about April 27, 2004, Plaintiff commenced work for Defendant GNMS as a Secondary Marketing Specialist and was terminated in her capacity of Secondary Marketing Specialist on or about June 23, 2006.

14. Plaintiff performed her duties in a competent fashion, received positive employment reviews from her supervisors, and received corresponding wage raises. After Defendant Gilmore began working for Defendant GNMS in Carson City, Defendants, and each of them, subjected Plaintiff to intentional discrimination, which is prohibited by Title VII and the Age Discrimination Act.

15. On November 28, 2005, Plaintiff offered a suggestion regarding a report to Defendant Gilmore during a staff meeting. Defendant Gilmore immediately turned to Plaintiff and stated, "Herlina, I don't understand a single word that you said. You will need to speak more clearly." Without clarification from Plaintiff, two co-workers immediately explained to Defendant Gilmore what Plaintiff had said. Over the course of several weeks, multiple co-workers discussed the

///

inappropriateness of the incident; Plaintiff was embarrassed and humiliated by Defendant Gilmore's conduct and comments.

16. In 2005 and 2006, Defendant Gilmore made several remarks to Dionny Fonseca, an employee of Defendant GNMS, regarding his difficulty in understanding Plaintiff's accent. Moreover, Defendant Gilmore informed another co-worker, Kyle Rush, that there was a language barrier between himself and Plaintiff. Prior to Defendant Gilmore's employment with GNMS, Plaintiff did not receive any complaints regarding her accent or her ability to communicate.

17. In December 2005, Defendant Gilmore handed Cheryl Bartel, an executive assistant at GNMS, a resume from an individual with the last name "Fong". Upon information and belief, Defendant Gilmore stated, "I am not going to hire that Fong person", without even looking at the resume. Defendant Gilmore did not realize that the resume was that of Ms. Bartel. Her resume listed her last name as "Fong" (a surname from a previous marriage). After realizing his mistake, Defendant Gilmore turned to Ms. Bartel and asked if she had really been married to "a Chinese".

18. Ms. Bartel suggested to Defendant Gilmore that he should be more sensitive to Plaintiff's feelings and the way he approached her. Defendant Gilmore replied, "Why should I be concerned about Herlina's feelings? I have dealt with many Japanese from Wall Street in the past."

19. On several occasions in January and February 2006, Defendant Gilmore informed GNSM's operations manager, Mary Porras, that he wanted to replace Plaintiff with an individual he knew from the east coast.

20. In April 2006, Ms. Porras filed an age discrimination complaint with GNMS's human resources department. Plaintiff was one of thirteen employees who were asked to speak as a witness in Ms. Porras' discrimination matter. During the human resources' investigation, Plaintiff informed Gerene Sayre, Vice President of Human Resources at GNMS, of Defendant Gilmore's management style and treatment toward Plaintiff.

21. On June 9, 2006, Plaintiff was informed by Defendant Gilmore and Terry Foster, the Human Resources Manager, that her position as Secondary Marketing Specialist was being eliminated due to corporate restructuring. Ms. Foster informed Plaintiff that more restructuring

///

would occur in the next few weeks. No further restructuring occurred after elimination of Plaintiff's position.

22. Dionny Fonseca, a forty-two year old Costa Rican, assumed Plaintiff's job responsibilities from late June 2006 to mid-October 2006. On October 13, 2006, Ms. Fonseca was told by Defendant Gilmore that she would not be promoted to Secondary Marketing Specialist as the position was not open. On October 31, 2006, the position of Secondary Marketing Specialist, was offered to and filled by Jeffrey Kleinops, a twenty-five year old male, at a starting salary of $35,000.00 a year.

23. In lieu of her position as a Secondary Marketing Specialist, Plaintiff was offered a position as a field consultant. At the time, a field consultant's compensation was based solely on commission with no base pay. Had Plaintiff accepted the position, she most likely would not have received a paycheck for at least sixty days, assuming a commission was made immediately. Plaintiff declined the offer and her last day of employment of GNMS was Friday, June 23, 2006.

24. On the Monday following Plaintiff's termination, Defendant Gilmore announced that the corporate restructuring had ended. As stated above, and contrary to Defendants' express statements, no restructuring occurred after termination of Plaintiff's position.

25. At the time of her termination, Plaintiff was 44 years of age and had been in continuous employment of Defendant GNMS for two years and two months.

26. Between December 2005 and October 2006, Defendants engaged in a calculated course of conduct, which systematically terminated the employment of other female employees, who were replaced by younger, and except for a single instance, male employees: (1) Stephanie McGregor, Branch Manager was replaced by a twenty-nine year old male; (2) Mary Porras, a sixty-three year old Operations Manager was replaced by a female in her early thirties; (3) Cheryl Bartels, a fifty-two year old Executive Assistant / Business Operations Manager was replaced by a male in his mid-twenties; and (4) Dionny Fonseca, a forty-two year old Costa Rican, was informed by Defendant Gilmore that she would not be promoted to Secondary Marketing Specialist as the position was not open, and shortly thereafter, the position was offered to and filled by Jeffrey Kleinops, a twenty-five year old male.

**CONDITIONS PRECEDENT TO FILING ACTION**

27. Plaintiff has satisfied all conditions precedent to initiating this action in that the following three actions have occurred:

    (a) Plaintiff timely filed charges of discrimination with the Equal Employment Opportunity Commission ("EEOC");

    (b) the EEOC was not able to resolve the controversy (*See* the EEOC Right-to-Sue Letter, attached hereto as Exhibit A); and

    © the EEOC issued a "Right-to-Sue" letter to Plaintiff dated September 13, 2007, informing and advising Plaintiff that it was unable to resolve the controversy as described to it and that it was not prepared to take further efforts (*See* Exhibit A).

28. Plaintiff has timely filed this action in this Court following receipt of the Right-to-Sue letter from the EEOC.

**FIRST CAUSE OF ACTION**

**(National Origin Discrimination)**

29. Plaintiff hereby incorporates the allegations stated in paragraphs 1 through 28 as though the same were fully stated herein.

30. Defendants' conduct to which Plaintiff was subjected was unlawful in that it violated Title 42, section 2000e of the United States Code. Specifically, Defendants knowingly and continually subjected Plaintiff to a national origin discriminatory environment via the actions of Defendant Gilmore, which culminated in termination of her employment.

31. Defendants knew, and/or should have known, that Plaintiff was subjected to such an environment but failed to implement any timely, adequate remedial action. Defendants' failure constituted a violation of Title 42 of the United States Code.

32. Additionally, Defendants effectively terminated Plaintiff's employment through a demotion to an inferior position within the company and Plaintiff's national origin was a motivating factor in Defendants' decision to do so. Defendants' termination decision constituted a violation of Title 42 of the United States Code.

33. As a direct and proximate result of being subjected to said environment and her eventual termination, Plaintiff suffered extreme physical and emotional distress, lost wages, loss of enjoyment of life, and humiliation.

34. It has been necessary for Plaintiff to incur costs and to retain counsel in order to prosecute this action.

35. Plaintiff is informed and believes and thereon alleges that the aforementioned acts of said Defendants, and each of them, were willful, malicious, intentional, oppressive, were done in a willful and conscious disregard and with deliberate indifference to the rights, welfare and safety of Plaintiff, thereby justifying the awarding of compensatory, punitive and exemplary damages in an amount to be determined at the time of trial.

## SECOND CAUSE OF ACTION

### (Age Discrimination)

36. Plaintiff hereby incorporates the allegations contained in paragraphs 1 through 36 as though the same were fully stated herein.

37. Plaintiff is a member of a protected class under 29 U.S.C. § 631(a) in that all times herein, Plaintiff was over forty years of age.

38. Defendants' discriminatory actions to which Plaintiff was subjected were unlawful in that they violated the Age Discrimination in Employment Act, 29 U.S.C. § § 621. Specifically, Defendants knowingly and continually subjected Plaintiff to discriminatory actions based upon her age. Said actions adversely affected Plaintiff's employment in that her position as Secondary Marketing Specialist was eliminated, only to be reinstated by hiring a male approximately twenty years younger than Plaintiff.

39. Plaintiff was qualified for her position as Secondary Marketing Specialist and received positive reviews by her supervisors for work in that capacity.

40. Defendants knew, and/or should have known, that Plaintiff was being subjected to such discriminatory behavior and failed to implement any timely, adequate remedial action. Defendants' failure constituted a violation of 29 U.S.C. § § 621.

///

41. As a direct and proximate result of being subjected to said discrimination, Plaintiff suffered extreme physical and emotional distress, lost wages, loss of enjoyment of life, and humiliation.

42. It has been necessary for Plaintiff to incur costs and to retain counsel in order to prosecute this action.

43. Plaintiff is informed and believes and thereon alleges that the aforementioned acts of said Defendants, and each of them, were willful, malicious, intentional, oppressive, were done in a willful and conscious disregard and with deliberate indifference to the rights, welfare and safety of Plaintiff, thereby justifying the awarding of compensatory, punitive and exemplary damages in an amount to be determined at the time of trial.

### THIRD CAUSE OF ACTION

### (Gender Discrimination)

44. Plaintiff hereby incorporates the allegations contained in paragraphs 1 through 43 as though the same were fully stated herein.

45. The conduct to which Plaintiff was subjected was unlawful in that it violated Title 42, section 2000e of the United States Code. Defendants knowingly and continually subjected Plaintiff to a gender discriminatory environment by and through the actions of its managers, agents, and employees.

46. Defendants knew, and/or should have known, that Plaintiff was being subjected to such an environment and failed to implement any timely, adequate remedial action. Defendant's failure constituted a violation of Title 42 of the United States Code.

47. As a direct and proximate result of being subjected to said environment, Plaintiff suffered extreme physical and emotional distress, lost wages, loss of enjoyment of life, and humiliation.

48. It has been necessary for Plaintiff to incur costs and to retain counsel in order to prosecute this action.

49. Plaintiff is informed and believes and thereon alleges that the aforementioned acts of said Defendants, and each of them, were willful, malicious, intentional, oppressive, were done in a willful

and conscious disregard and with deliberate indifference to the rights, welfare and safety of Plaintiff, thereby justifying the awarding of compensatory, punitive and exemplary damages in an amount to be determined at the time of trial.

### FOURTH CAUSE OF ACTION

### (Retaliation)

50. Plaintiff hereby incorporates the allegations contained in paragraphs 1 through 49 as though the same were fully stated herein.

51. Defendants' conduct, statements, and/or acts, including termination of Plaintiff's Secondary Marketing Specialist position, as described above, constituted a course of retaliatory conduct in violation of Title VII of the Civil Rights Act. Defendants implemented said retaliation in direct response to Plaintiff's opposition and complaints of actionable discriminatory practices, statements, and conduct which occurred in Defendant GNMS' work environment.

52. Specifically, Plaintiff engaged in protected opposition to alleged discrimination in GNMS' work environment by serving as a witness to Ms. Porras' internal age discrimination complaint in April 2006 and by informing human resources of Defendant Gilmore's actions toward Plaintiff.

53. A short time thereafter, Defendants terminated Plaintiff's employment as a Secondary Marketing Specialist. This adverse employment action occurred subsequent to Plaintiff's protected activity and a causal connection exists between such activity and Defendant GNMS' decision to terminate Plaintiff.

54. As a direct and proximate result of being subjected to said environment, Plaintiff suffered extreme physical and emotional distress, lost wages, loss of enjoyment of life, and humiliation.

55. It has been necessary for Plaintiff to incur costs and to retain counsel in order to prosecute this action.

56. Plaintiff is informed and believes and thereon alleges that the aforementioned acts of said Defendants, and each of them, were willful, malicious, intentional, oppressive, were done in a willful and conscious disregard and with deliberate indifference to the rights, welfare and safety of Plaintiff,

thereby justifying the awarding of compensatory, punitive and exemplary damages in an amount to be determined at the time of trial.

### FIFTH CAUSE OF ACTION

### (Constructive Discharge)

57. Plaintiff hereby incorporates the allegations contained in paragraphs 1 through 57 as though the same were fully stated herein.

58. Defendants' deliberate discriminatory actions based on age, race, gender and retaliation rendered Plaintiff's working conditions intolerable in that she no longer would receive her base pay. If she accepted the position of Field Consultant, she would have been compensated on commission only and would not have received her first paycheck for at least sixty days after acceptance of the new position.

59. A reasonable person in Plaintiff's position would have felt compelled to resign because resignation was the only reasonable alternative to Defendants' intentional creation of intolerable working conditions.

60. Plaintiff's resignation was a reasonably foreseeable result of Defendants' actions and Defendant acted with the intent of forcing Plaintiff to resign.

61. As a direct and proximate result of being subject to said discharge, Plaintiff has suffered extreme physical and emotional distress, lost wages, loss of enjoyment of life, and humiliation.

62. It has been necessary for Plaintiff to incur costs and to retain counsel in order to prosecute this action.

63. Plaintiff is informed and believes and thereon alleges that the aforementioned acts of said Defendants, and each of them, were willful, malicious, intentional, oppressive, were done in a willful and conscious disregard and with deliberate indifference to the rights, welfare and safety of Plaintiff, thereby justifying the awarding of compensatory, punitive and exemplary damages in an amount to be determined at the time of trial.

**WHEREFORE**, Plaintiff prays for relief as follows:

1. For an award of compensatory and punitive damages as allowed by statute;

2. For an award of economic damages according to proof;

3. For an award of costs and reasonable attorney's fees; and

4. For such other and further relief as the Court or jury may deem proper.

DATED this 29th day of November, 2007.

*Law Offices of* Laurence Peter Digesti

/s/ Laurence Peter Digesti
Laurence Peter Digesti

Heintz Robyn & Digesti LLP

/s/ Laurence Peter Digesti for
Matthew Peter Digesti

Counsel for Plaintiff

# EXHIBIT A

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Herlina Snider<br>6994 Poco Bueno Circle<br>Sparks, NV 89436 | From: | San Diego Local Office<br>401 B Street<br>Suite 510<br>San Diego, CA 92101 |
|---|---|---|---|

[ ] *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 34B-2007-00557 | Carmen Ortiz<br>Investigator | (619) 557-7288 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[ ] Having been given 30 days in which to respond, you failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve your charge.

[ ] While reasonable efforts were made to locate you, we were not able to do so.

[ ] You were given 30 days to accept a reasonable settlement offer that affords full relief for the harm you alleged.

[X] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

Joyce E. Cooper,
Local Office Director

9/13/2007
*(Date Mailed)*

Enclosures(s)

cc: Susan Heaney Hilden, Esq.
Attorney at Law
LITTLER MENDELSON
50 West Liberty Street, Suite 400
Reno, NV 89501

# INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.
If you also plan to sue claiming violations of State law, please be aware that time limits and other provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS** -- **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS** -- **Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/00 to 12/1/00, you should file suit before 7/1/02 -- *not* 12/1/02 -- in order to recover unpaid wages due for July 2000. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION** -- **Title VII and the ADA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do *not* relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE** -- **All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months of this Notice**. (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*